**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL DARNELL HARRIS,

                 Petitioner,               Case Number: 05-CV-74316

v.                                   HONORABLE AVERN COHN

HUGH WOLFENBARGER,

                 Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

    This is a habeas case under 28 U.S.C. § 2254.  Petitioner Michael Darnell Harris

(Petitioner) is a state inmate at the Carson City Correctional Facility in Carson City,

Michigan, serving life sentences for two first-degree murder convictions.  Petitioner filed

a *pro se* petition for a writ of habeas corpus claiming that his convictions were

unconstitutionally obtained on various grounds.  Respondent, through the Attorney

General's office, filed a response, arguing that Petitioner's claims lack merit and/or are

procedurally defaulted.  For the reasons that follow, the petition will be denied for lack of

merit.

### I.  Background

    Petitioner's convictions arise out of two separate murders occurring in

Washtenaw County in 1982.  On September 19, 1982, Margorie Upson's body was

discovered in her home in Ypsilanti, Michigan.  Upson, who was 85-years-old, had been

raped, beaten and strangled.  Evidence collected at the time included vaginal swabs,

which were deemed insufficient for DNA testing, but preserved for later testing.

On October 1, 1982, the body of 84-year-old Louise Koebnick's was discovered at her home in Ann Arbor, Michigan. She too had been beaten, raped, and strangled. Evidence collected at the time included fingernail scrapings and vaginal swabs, which were preserved for later testing.

In the late 90s, the serological evidence that had been collected from these two crime scenes, and the crime scene of the murder of another elderly woman, Florence Bell, were reexamined. Upon conducting DNA testing that had not been available at the time of the murders, the state police learned that DNA profiles from all three of the murder scenes matched one another. The DNA profile established by the crime-scene evidence was then linked to Petitioner through a centralized DNA index system. Petitioner was arrested while incarcerated for a different crime.

Police executed a search warrant for Petitioner's prison cell and seized, among other things, a magazine titled "Over 50." Police also executed a search warrant for Petitioner's blood. The Michigan State Police crime lab found that Petitioner's DNA profile matched that found in semen from each of the crime scenes.

## II. Procedural History

Petitioner was charged in two separate cases in Washtenaw County Circuit Court. In case number 01-2001, Petitioner was charged with first-degree premeditated murder and felony murder in connection with the death of Margorie Upson. In case number 01-2003, Petitioner was charged with first-degree premeditated murder and felony murder in connection with the death of Louise Koebnick. Petitioner chose to represent himself at both trials, with stand-by counsel available to assist him.

On October 11, 2002, a consolidated hearing was held on Petitioner's Motion to

Suppress Search Warrant and Items Seized, and a Motion to Suppress DNA Test because of lack of credibility. The trial court denied the motions. Petitioner filed an Application for Emergency Interlocutory Appeal in the Michigan Court of Appeals challenging the trial court's denial of these motions. The Michigan Court of Appeals denied leave to appeal for failure to persuade the Court of the need for immediate appellate review. People v. Harris, No. 244838 (Mich. Ct. App. Jan. 30, 2003). Petitioner did not seek leave to appeal in the Michigan Supreme Court. See Affidavit of Corbin R. Davis, Clerk, Michigan Supreme Court, 4/27/2006.

Following a jury trial in the Upson case, Petitioner was convicted of one count of first-degree premeditated murder, and one count of felony murder "committed while in the perpetration or attempted perpetration of both breaking and entering of a dwelling with intent to commit criminal sexual conduct in the third degree or larceny and criminal sexual conduct in the third degree." People v. Harris, No. 248247 (Mich. Ct. App. Feb. 10, 2005). On April 7, 2003, he was sentenced to life imprisonment on the first-degree premeditated murder conviction, and the felony-murder conviction was merged with the first-degree premeditated murder conviction to avoid double-jeopardy concerns.

Several months later, Petitioner was tried before a jury for the murder of Koebnick. He was convicted of first-degree premeditated murder and felony murder. On December 29, 2003, he was sentenced to life imprisonment for a single first-degree murder conviction, supported by two alternate theories – premeditated and felony murder.

Petitioner filed separate appeals of right in the Michigan Court of Appeals. In case number 01-2001, the Upson murder, Petitioner presented the following claims:

I.      Where the prosecution suspected the defendant/appellant of this crime in 1982, and did not make a claim against the defendant/appellant until the year 2001, did the prosecution violate the defendant's federal due process right to a speedy arrest?

II.     Where the defendant filed a motion for directed verdict of acquittal at trial, and the trial court denied motion, although no evidence supporting claim of DNA evidence against defendant was presented at trial, did the trial court abuse her discretion in denying motion for directed verdict of acquittal?

III.    Where prosecution did not produce, authenticate or admit into evidence at trial, any DNA evidence, which was the chief and only claim of evidence against the defendant, should the testimony of DNA be suppressed from the trial record, and a new trial ordered?

IV.     Where the people endorsed a finger print expert as a witness to testify at trial, and failed to produce the witness, did the people deny the defendant his Sixth Amendment right to cross-examine witnesses against him, and to <u>Brady</u> material?

V.      Where district court appointed counsel failed to file an objection to the people's notice to file and admit into evidence, forensic reports and DNA test results, without the presence of experts, did district court counsel deny the defendant effective counsel?

VI.     Where the district court failed to allow the defendant to present witnesses at the preliminary examination did the district court deny the defendant his Sixth Amendment right to compulsory process?

In case number 01-2003, the Koebnick murder, Petitioner presented the following

claims:

I.      Where the Appellant was subjected to successive prosecutions for the murder of Louise O. Koebnick, did the successive prosecutions offend the 5th Amendment against double jeopardy and collateral estoppel?

II.     Where the State used a search warrant to confiscate property from the Appellant that was neither evidence of a crime or contraband, and was used at trial, did the State create a jurisdictional defect, and lose subject matter jurisdiction over all items confiscated through search warrant?

III.    Where the State first labeled the Appellant the prime suspect in the murder of Louise Koebnick in 1982, and arrested the Appellant in

December of 2001, without giving a good faith explanation for the 21 year delay, was the Appellant denied due process?

IV.    Where the Appellant requested direct verdict of acquittal because the State failed to establish a proper foundation for its claim of DNA evidence should the Appellant have been granted direct verdict of acquittal on the grounds of insufficient evidence?

V.    Where the court and State agreed with the prosecution and defense DNA and serology/chemical test to be conducted on evidence before but serology/chemical test were suppressed by prosecution, was Appellant denied right to produce a defense?

VI.    Where the prosecution presented testimony from DNA expert that a knife used in the murder of Florence Bell could have had finger print impressions on it, and the State failed to call it's endorsed finger print expert to the trial, was the Appellant denied the right to confront witness and denied Brady material?

The Michigan Court of Appeals consolidated the appeals and, on February 10, 2005, issued an opinion affirming Petitioner's convictions. <u>People v. Harris</u>, Nos. 248247 & 253337 (Mich. Ct. App. Feb. 10, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the following claims:

I.    Where the prosecutor [raised] the possibility of the Appellant being responsible for other unsolved crimes, in his closing arguments, did the prosecutor commit misconduct that denied the Appellant a fair trial?

II.    Where the prosecution subjected the Appellant to successive prosecutions in the murder of Louis Koebnick, did the State violate collateral estoppel and double jeopardy protections under the 5th Amendment of the U.S. Constitution?

III.    Where the Appellant moved for direct verdict of acquittal in the trial court, did the trial court and Michigan Court of Appeals, both abuse their discretion for failing to grant direct verdict of acquittal in this matter?

IV.    Where the prosecution failed to lay a proper foundation for the identification of DNA evidence, did the State fail to lay a proper foundation

5

for DNA testimony?

V.      Where the State violated search warrant statutes in the authority to collect evidence in a search, did the prosecution lose jurisdiction to confiscate and use items in a court of law?

VI.     Where the State, trial court, and Appellant agreed to stipulations on independent DNA testing, to include DNA and serology testing, with all prior test results being undisclosed to any independent laboratory, and the State violated those stipulations, did the prosecution deny the Appellant a right to a fair trial, and a defense?

VII.    Where the trial court allowed pending charges of murder in both trials, and a pornography book, did the trial court deny the Appellant a fair trial with prejudicial 404B evidence?

VIII.   Where the police labeled the Appellant a prime suspect in these murders in 1982, but did not charge the Appellant with the murders until December of 2001, did the prosecution deny Appellant his 14th Amendment right to due process in speedy arrest violations?

IX.     Where the State failed to produce it's endorsed finger print expert at trial, and allowed a DNA expert to testify about possible finger print evidence on the murder weapon, did the prosecution deny the Appellant the right to cross examine finger print expert?

X.      Where the prosecution claimed that crime scene evidence was found by a crime scene technician for the Michigan State Police, and failed to call that technician as a witness, did the State deny the Appellant his 6th Amendment right to confront witnesses against him?

XI.      Did the Michigan Court of Appeals abuse it's discretion in allowing the Appellee to have oral arguments, without allowing the Appellant to participate in the arguments in person?

XII.    Did the Michigan Appellate Court abuse it's discretion in denying the Appellant's double jeopardy issue related to the Appellant being convicted of first degree murder, and felony murder for a single death in the Marjorie Upson murder?

The Michigan Supreme Court denied leave to appeal.  People v. Harris, 474

Mich. 898 (Table) (2005).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting

the following claims:

I.     Where the Petitioner was subjected to collateral estoppel and double jeopardy violations in docket 01-2003-FC, by being subjected to the same evidence and prosecution, twice, should docket 01-2003-FC be vacated on the grounds of 5th Amendment violations?

II.     Where the Petitioner was labeled the prime suspect by State and local law enforcement officials in 1982, and was arrested December of 2001, without good faith, was the Petitioner prejudiced by the delay which would require dismissal of all charges with prejudice?

III.     Where the prosecutor subjected Petitioner to misconductful [sic] arguments in closing arguments, that assumed that Petitioner may be guilty of other unsolved crimes, did prosecution deny Petitioner a fair trial in docket 01-2001-FC?

IV.     Where prosecution violated stipulations for independent DNA and serology testing by denying Petitioner serology testing and exposing independent laboratory to police test results, is Petitioner entitled to a new trial in docket 01-2003-FC?

V.     Where prosecution used two counts of charged murders, that were pending charges, and one pornography book found 18 years after murders, as 404b evidence, did prosecution denying Petitioner a fair trial in dockets 01-2001-FC and 01-2003-FC?

VI.     Where police used search warrant to confiscate pornography book from prison cell, which was neither evidence of a crime or contraband under MCL 780.652, did State violate 14th Amendment to due process and property rights?

VII.     Where State failed to call crime scene technician who allegedly discovered crime scene evidence in docket 01-2001-FC, and failed to call endorsed finger print expert, after allowing DNA expert to testify about possible finger prints on murder weapon, did prosecution deny Petitioner 6th Amendment right to confront witnesses against him in docket 01-2003-FC and 01-2001-FC?

VIII.     Where M.R.E. 404(b) is inconsistent with F.R.E. 404(b), and it allows the state of Michigan to use subsequent acts, and pending charges, does M.R.E. 404(b) violate the Fifth Amendment against collateral estoppel and double jeopardy?

IX.     Where state erred in denying motion for directed verdict of acquittal,

should directed verdict of acquittal be granted?

X.      Where there was no effort made by the state to vacate dual murder convictions in docket 01-0001-FC, did the state subject Petitioner to double jeopardy?

XI.     Where the state denied the petitioner the opportunity to represent himself at oral arguments on appeal, and to object to any appellate arguments, did the state deny Petitioner his Sixth Amendment right to a fair appeal of right?

## III. Standard

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court

must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state

court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-

06 (2000). An "unreasonable application occurs" when "a state-court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

8

Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 410-11.

## IV.  Discussion

### A.  Double Jeopardy and Collateral Estoppel Claims

In his first, eighth, and tenth claims for habeas corpus relief, Petitioner argues that his convictions violate the prohibition against double jeopardy and the principle of collateral estoppel.

First, evidence regarding the murder of Koebnick was admitted at the trial for the Upson murder.  Petitioner argues that admission of this evidence at the Upson murder trial and the subsequent Koebnick murder trial required him to twice defense himself against charges that he murdered Koebnick in violation of his right to be free from double jeopardy and the principle of collateral estoppel.

The Michigan Court of Appeals denied this claim, holding in pertinent part:

> The prosecutor did not previously place defendant in jeopardy of conviction for Koebnick's murder during the Upson trial in LC # 01-002001-FC given that (1) the amended information in LC # 01-002001-FC asserts charges against defendant arising only from the death of Upson, (2) the jury found defendant guilty of murdering only Upson in LC # 01-002001-FC, and (3) the circuit court imposed sentence in LC # 01-002001-FC only for defendant's murder of Upson.  Collateral estoppel does not apply because no questions of fact essential to a conviction of defendant for murdering Koebnick were actually litigated and determined by a valid and final judgment in LC # 01-002001-FC.

Harris, slip op. at 19.

The Double Jeopardy Clause of the Fifth Amendment provides no person shall

be "subject for the same offense to be twice put in jeopardy of life or limb."[1]  Thus, a

defendant may not be prosecuted twice for the same offense.  "[T]he introduction of

relevant evidence or particular misconduct in a case is not the same thing as

prosecution for that conduct."  United States v. Felix, 503 U.S. 378, 386 (1992).  In this

case, the offenses with which Petitioner was charged in the Upson murder trial were

distinct from those charged in the Koebnick murder trial.  Petitioner was not prosecuted

for the Koebnick murder during the Upson murder trial.  Instead, evidence related to the

Koebnick murder was admitted as other acts evidence under Rule 404(b).  The State of

Michigan, therefore, was free to prosecute Petitioner for the Koebnick murder at that

subsequent trial.

The Double Jeopardy Clause incorporates the doctrine of collateral estoppel in

criminal proceedings.  "Collateral estoppel, or, in modern usage, issue preclusion,

'means simply that when an issue of ultimate fact has once been determined by a valid

and final judgment, that issue cannot again be litigated between the same parties in any

future lawsuit.'"  Schiro v. Farley, 510 U.S. 222, 232 (1994), *quoting* Ashe v. Swenson,

397 U.S. 436, 443 (1970).  Because Petitioner was not charged with the Koebnick

murder during the Upson murder trial and a determination of his guilt or innocence was

not made at the Upson murder trial, his subsequent prosecution not barred by the

doctrine of collateral estoppel.

Second, Petitioner argues that the state court's failure to vacate one of the two

_____

[1] The Double Jeopardy Clause is made applicable to the states through the Due
Process Clause of the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784
(1969).

murder convictions in case number 01-0001, violated his right to be free from double jeopardy.  The jury found Petitioner guilty of first-degree premeditated murder and felony murder.  The trial court sentenced Petitioner to life imprisonment for a single first-degree murder conviction, supported by two alternate theories – premeditated murder and felony murder.  Because Petitioner's conviction was modified to reflect one conviction for murder based upon two alternate theories, two separate convictions for the same murder were not imposed and double jeopardy concerns are not implicated.

Petitioner has failed to show that the state court's opinion finding that the Double Jeopardy Clause and the doctrine of collateral estoppel were not violated was contrary to or an unreasonable application of Supreme Court precedent.  Therefore, habeas relief is denied on these claims.

### B.  Pre-Arrest Delay

Petitioner next claims that the nineteen-year delay in prosecuting him for the 1982 murders of Upson and Koebnick was a result of bad faith and requires that that the charges against him be dismissed.

The Due Process Clause of the Fifth Amendment provides a defendant limited protection against preindictment delay.  U.S. v. Lovasco, 431 U.S. 783, 789 (1977); *see also* United States v. Marion, 404 U.S. 307, 324 (1971).  In determining whether a preindictment delay violates due process, a court must decide whether the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency."  Lovasco, 431 U.S. at 790 (internal quotations omitted).  "In order to prevail on a claim of unconstitutional pre-indictment delay, a defendant must demonstrate that

he suffered substantial prejudice to his defense as a result of the delay and that the prosecution intentionally delayed to gain a tactical advantage over him." Smith v. Caruso, 53 Fed. Appx. 335, 336 (6th Cir. 2002), *citing* Lovasco, 431 U.S. at 790.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, although not citing the Lovasco standard, cited case law incorporating that standard, and held that Petitioner failed to show he suffered prejudice as a result of the delay or that the prosecution intentionally delayed to gain a tactical advantage. The Michigan Court of Appeals reasoned, in pertinent part:

> We find that defendant has failed to satisfy his initial burden to demonstrate that the years of prearrest delay in these cases actually and substantially prejudiced his right to fair trials. "To be substantial, the prejudice to the defendant must meaningfully impair his ability to defend against the charges against him in such a manner that the outcome of the proceedings will likely be affected." Crear, *supra* at 166. In his briefs on appeal, defendant asserts that the many years of delay prevented him from having the ability to raise an alibi defense during his trials, but defendant fails to suggest any specific alibi, or evidence that would have supported his claim of alibi, that the prearrest delay somehow precluded him from developing or introducing.[13] . . .
>
> With respect to defendant's complaint that because of the delay he could not locate former students Eric Jackson and Darnell Jones, who in September and October 1982 attended the Bach Elementary School located across the street from Koebnick's house, defendant successfully introduced during both the trials testimony and other evidence that in 1982 these students advised the police that they had seen a Caucasian man with a motorcycle enter Koebnick's house around the time of her murder. Because the jury considered the statements containing the recollections of Jackson and Jones that defendant purportedly hoped to introduce through their testimony during his trials, we cannot conclude that defendant's inability to call Jackson and Jones as witnesses actually prejudiced him, or meaningfully impaired "his ability to defend against the charges against him in such a manner that the outcome of the proceedings . . . likely [was] affected." Crear, supra at 166.14

_____

[13] Defendant elicited testimony indicating that he was aware by at least

1983 or 1984 that he had become a suspect in the 1982 murders of Upson, Koebnick and Bell.

[14] Even assuming that the prearrest delay in this case actually and substantially prejudiced defendant in some respect, our review of the records reveals no evidence suggesting that the prosecutor delayed charging defendant because he hoped to gain a tactical advantage. Although defendant's briefs on appeal opine that the prosecutor's proffered excuse for the delay—that the police waited until the late 1990s when advanced DNA technology permitted them to arrange for testing of the trace evidence from the 1982 crime scenes—did not qualify as a good faith excuse for the delay, defendant's briefs do not allege any acts of deliberate delay by the prosecution or police intended to gain a tactical advantage. Moreover, the prosecutor amply showed that the prearrest delay in these cases occurred because of the need for further investigation, in light of the evidence indicating that (1) the police recovered no fingerprints from the 1982 murder scenes that matched defendant's, (2) the limitations of other forensic tools of early 1980s like blood typing evidence precluded specific identification of an assailant, and (3) only beginning in the mid 1990s did the state police crime lab begin DNA analysis utilizing the PCR/STR technique, which yielded results from much smaller quantities of genetic material than the amounts required to support earlier testing techniques. Adams, supra at 144 (rejecting a claim of improper prearrest delay because investigative rather than tactical concerns governed the prosecution's course of action).

Harris, slip op. at pp. 12-13.

The state court's conclusion that Petitioner's vague allegations of witnesses lost were insufficient to establish prejudice is supported by Supreme Court precedent. In Marion, the Supreme Court held:

Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

404 U.S. at 325-36.

In this case, Petitioner does not allege that he was prosecuted in violation of the

13

applicable statute of limitations.  Therefore, the Court concludes that the state court's

finding that Petitioner's vague allegations of prejudice were insufficient to warrant

reversal and that Petitioner failed to show the delay was an intentional attempt to gain a

tactical advantage was not contrary to or an unreasonable application of Supreme Court

precedent.  The Court denies habeas relief on this claim.

### C.  Alleged Prosecutorial Misconduct

Petitioner asserts two claims of prosecutorial misconduct.  Specifically, Petitioner

argues the prosecutor engaged in misconduct by: (i) referring to other, unsolved crimes

in his closing statement; and (ii) violating stipulations regarding independent DNA and

serology testing.  Respondent argues that the first prosecutorial misconduct claim is

unexhausted and the second is procedurally defaulted.

The first claim was presented for the first time in Petitioner's application for leave

to appeal to the Michigan Supreme Court.  A prisoner challenging his confinement by

way of a habeas corpus petition must exhaust his state court remedies prior to seeking

federal habeas corpus relief by fairly presenting the substance of each federal

constitutional claim in state court.  28 U.S.C. § 2254(b); Coleman v. Thompson, 501

U.S. 722, 731 (1991); Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  A prisoner

"'fairly presents' his claim to the state courts by citing a provision of the Constitution,

federal decisions using constitutional analysis, or state decisions employing

constitutional analysis in similar fact patterns."  Levine v. Torvik, 986 F.2d 1506, 1516

(6th Cir. 1993); see also Prather v. Reese, 822 F.2d 1418, 1420 (holding that

"[o]rdinarily, the state courts must have had the opportunity to pass on defendant's

claims of constitutional violations").  Where, as in this case, a claim is presented for the

first time to a state court on discretionary review, that does not constitute a "fair presentation" of the claim.  Castille v. Peoples, 489 U.S. 346, 351 (1989).

A federal court, however, may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims.  28 U.S.C. § 2254(b)(2); see also Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991), cert. denied, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court).  For the reasons set forth below, the Court has concluded that this prosecutorial misconduct claim does not warrant habeas corpus relief.  Accordingly, in the interests of efficiency and justice, the Court will address the petitioner's claim rather than dismiss the petition on the ground of failure to exhaust.  See 28 U.S.C. § 2254(b)(2); Cain, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."  Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances."  Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982).  The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'"  Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (quoting Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Petitioner objects to the following statement made by the prosecutor during closing argument at the Upson murder trial:

> And yes, if Michael Zsenyuk [the investigating police officer] hadn't looked at this case, DNA testing would not have gotten done. However long it took. It's too bad for Mr. Harris, but there is absolutely nothing unfair about that. Yes, there may be other cases. There may be little tubes at the crime lab that hold secrets to other murders. We don't have to deal with now but the suspect is going to –

*See* Petitioner's brief at p. 4.

Petitioner argues that the prosecutor's argument implies that he is responsible for and has gotten away with other unsolved crimes. However, Petitioner fails to address the defense's objection and the prosecutor's response:

> Defendant Harris: Your honor, I'm going to object to that. That's very misleading to this jury. We don't have to talk about other cases.
>
> Prosecutor: I'm not talking about defendant here. I'm talking about other people. You know from reading papers, you know from being alive, crimes are committed. Yeah, they should be top priority day after day. Except what do you tell the next family of victims. It took what it took. . . .

Tr., 2/11/03, p. 79.

After reviewing the closing argument in its entirety, the prosecutor's comment was not improper. The prosecutor attempted to explain to the jury the delay in prosecuting the case. He did so by reference to the fact that an unsolved crime is not unheard of and that police resources are sometimes directed elsewhere until someone reconsiders the circumstances of an unsolved crime, as Lieutenant Zsenyuk did in this case. This brief comment did not render Petitioner's trial unfair or deprive him of due process.

In his second prosecutorial misconduct claim, Petitioner argues that the prosecution violated stipulations related to the independent testing of DNA evidence.

The stipulation apparently included an agreement that the results of tests conducted by the state police would not be given to the independent laboratory, that no contact would be had by the state police with the independent laboratory prior to that lab's completion of testing, and that the independent laboratory would conduct serology tests to determine the source of the samples, e.g., blood, urine, or saliva.

Respondent argues that this claim is procedurally defaulted because the Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, held that these claims were not preserved for appellate review. Where a state prisoner has defaulted his federal claims in state court based upon an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

To determine whether a claim is procedurally defaulted, the court must determine: (1) if there is a state procedural rule that applies and petitioner failed to comply with that rule; (2) if the state court actually enforced the state procedural sanction; (3) if the state procedure ground is an "independent and adequate" ground to refuse review; and (4) if there is no cause and prejudice to excuse the default. Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.1986), "[A] state rule is independent if the state court actually relies on it to preclude a merits review." Biros v. Bagley, 422 F.3d 379, 387 (6th Cir.2005) (emphasis added).

"Out of respect for finality, comity, and the orderly administration of justice, a

federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." Dretke v. Haley, 541 U.S. 386, 388 (2004). "The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Id. *quoting* Strickland v. Washington, 466 U.S. 668, 697 (1984).

The last state court to address this claim, the Michigan Court of Appeals held that the issue was not preserved for appellate review because Petitioner failed to object to the trial court's conduct at trial. Harris, slip op. at 19-20. The failure to object rule is regularly followed by Michigan courts. *See* Simpson v. Jones, 238 F.3d 399, 408 (6th Cir. 2000); Toler v. McGinnis, 23 Fed. Appx. 259, 269 (6th Cir. 2001). The fact that the state court of appeals engaged in plain error review of this claim does not constitute a waiver of the state procedural default. *See* Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See* Hinkle v. Randle, 271 F. 3d 239, 244 (6th Cir. 2001). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Petitioner does not argue any cause to excuse his procedural default. Therefore, his claim is barred from review unless he unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus,

Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Id. at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is barred from consideration by procedural default.

### D. Admission of Other Acts Evidence

Petitioner argues that the trial court erred in admitting other acts evidence. Specifically, Petitioner challenges the admission of a pornography magazine entitled "Over 50" and evidence related to the murder of Florence Bell (Petitioner was implicated in her murder but never brought to trial), in both trials. He also challenges the admission of evidence related to the Upson murder in the Koebnick trial, and evidence of the Koebnick murder in the Upson trial.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994), citing Fuson v. Jago, 773 F.2d 55, 59 (6th Cir. 1985). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.2003). The Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. See Dowling v. United States, 493 U.S. 342,

19

352-53 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see Huddleston v. United States, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). Id. at 513. Petitioner's challenge to the admission of the other acts evidence, therefore, does not warrant habeas relief.

Furthermore, even if Petitioner's claim were cognizable on habeas review, he is not entitled to relief. The Michigan Court of Appeals upheld the trial court's determination that the evidence was properly admitted. The court of appeals reasoned that the "Over 50" pornographic magazine was admitted for noncharacter reasons and was admitted to establish that Petitioner had a sexual interest in older women and, consequently, that he had a motive for attacking Upson and Koebnick. The court further concluded that there was no danger of unfair prejudice particularly given that the circuit court read each jury a cautionary instruction against drawing any bad character inferences on the basis of defendant's alleged commission of other improper acts or crimes. In addition, the state court held that the admission of evidence of the other murders was proper because the facts concerning the murders combined to create special qualities or circumstances tending to prove Petitioner's scheme, plan, or system in committing the murders. The similarities were strongly probative of Petitioner's identity in each of the two murder cases. Harris, slip op. at 5-6. The state court's

decision is neither contrary to nor an unreasonable application of United States Supreme Court precedent. The disputed evidence was properly admitted under Michigan law to establish motive and intent. Petitioner has not shown that the admission of the evidence of his prior conduct rendered his trial fundamentally unfair.

E. Fourth Amendment Claim

In his sixth habeas claim, Petitioner argues that the warrant pursuant to which his prison cell was searched and the "Over 50" magazine seized, violated Mich. Comp. Laws § 780.652 and the United States Constitution.

First, Petitioner's claim that the search violated Mich. Comp. Laws § 780.652 is not cognizable on habeas review. Habeas relief lies only for a constitutional violation, not for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991).

Second, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v. Powell, 428 U.S. 465, 494-95, 96 S. Ct. 3037, 3052 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

Petitioner's Fourth Amendment claims were the subject of a suppression hearing

21

in state court.  Following the hearing, the trial court denied the motion to suppress.

Petitioner then appealed his conviction to the Michigan Court of Appeals, presenting his

Fourth Amendment claims.  The Michigan Court of Appeals addressed the claim in a

lengthy opinion and found no Fourth Amendment violation.  <u>Harris</u>, slip op. at 6-7.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, again

presenting his Fourth Amendment claims.  The Michigan Supreme Court denied leave

to appeal. <u>People v. Harris</u>, 474 Mich. 898 (Mich. 2005).

Based upon the foregoing, this Court concludes that Petitioner was provided an

opportunity for full and fair litigation of his Fourth Amendment claim in the Michigan

courts.  Petitioner's disagreement with the state courts' conclusions regarding his

motion to suppress does not render the procedural mechanism for presenting his claims

inadequate.  Consequently, Petitioner's Fourth Amendment claim is not cognizable on

habeas review.

### F.  Alleged Confrontation Clause Violation

Next, Petitioner claims that his right to confront witnesses against him was

violated when the prosecution failed to call Charlotte Day and Margaret Huston as

witnesses.  Huston, a fingerprint expert witness, was listed on the prosecution witness

list.  Charlotte Day, a forensic expert, collected evidence from the Upson crime scene.

Day was not called as a prosecution witness; instead, Charles Barna testified

The Confrontation Clause of the Sixth Amendment provides: "In all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him."  U.S. Const. amend. VI.  "The Sixth Amendment's right of an accused to

confront the witnesses against him is . . . a fundamental right and is made obligatory on

the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." Id., at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" Id. at 405, *quoting* Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965).

The Confrontation Clause ensures that a defendant will have the opportunity to confront those witnesses who provide evidence against him. *See* Cornelius v. Alameida, 2006 WL 2272816, *7 (E.D. Cal. August 08, 2006) (the Sixth Amendment right to confrontation ensures that a defendant will be given an opportunity to cross-examine the witnesses *against* him); Andrews v. Cain, 71 F. Supp. 2d 560, 566 (E.D. La. 1999) (a defendant has "no right to confront or cross-examine witnesses who did not give evidence at trial").

In this instance, neither Day nor Huston provided evidence against Petitioner. Petitioner also fails to allege that he attempted to but was unable to call these witnesses himself. On this basis, the Michigan Court of Appeals denied relief on this claim. This decision was not contrary to or an unreasonable application of Supreme Court precedent. Thus, Petitioner is not entitled to habeas relief in this claim.

G.  Trial Court's Denial of Motion for Directed Verdict

Petitioner argues that the trial court erred in denying his motions for a directed verdict in the Upson murder trial.  Petitioner bases his claim on the argument that the prosecutor failed to establish a chain of custody for the DNA evidence which implicated him.

"[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required" by the due process guarantee of the Fourteenth Amendment."  In re Winship, 397 U.S. 358, 362 (1970).  In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original).  Under 28 U.S.C. § 2254(d)(1), a federal court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable application of Supreme Court precedent.  In making this determination, a federal court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous.  28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

In its lengthy opinion affirming Petitioner's convictions, the Michigan Court of Appeals undertook an exhaustive review of the evidence presented at trial.  The Michigan Court of Appeals, although not citing the Jackson standard, cited case law which clearly incorporated that standard.  The court of appeals reviewed the testimony

24

regarding the attainment and testing of forensic material from the Upson and Koebnick crime scenes, and concluded that the testimony established that the various samples ultimately examined by the forensic experts were indeed what the experts reported them to be. A summary of the evidence produced at trial appears below.

A forensic scientist working for the Michigan State Police, Jeffrey Nye, testified that DNA obtained from the Upson murder scene showed the following: (1) the genetic profile of the male contributor to the vaginal swab was consistent with Petitioner's DNA profile at nine locations; (2) Petitioner's genetic profile was consistent with semen recovered from the scene; and (3) the likelihood that any one person's DNA profile would match the DNA profile from the crime scene material was one in every 3.3 million people in the African-American population. Another Michigan State Police forensic scientist, Stephen Milligan, testified similarly in regard to the DNA material obtained from the Koebnick murder trial. The DNA profile of the tested material matched Petitioner's at each of nine genetic locations examined. The probability of a person selected at random having a matching genetic profile is one in 3.3 trillion in the African-American population.

Based upon the conclusion that the state established the authenticity of the tested material and the persuasiveness of the forensic scientists testimony, the state court concluded that sufficient evidence was presented to sustain Petitioner's convictions.

Viewing the evidence in the light most favorable to the prosecution, Petitioner has failed to show that the Michigan Court of Appeals' holding that sufficient evidence was presented to sustain Petitioner's convictions was contrary to or an unreasonable

application of Supreme Court precedent.

Petitioner recently filed a "Motion to Grant Habeas Corpus" in which he asserts an argument related to the DNA evidence discussed above. Petitioner argues that evidence he discovered in 2005 showed that Charles Barna, the forensic scientist involved in collecting samples at the murder scenes and evaluating some of the samples, was involved in some misconduct while employed by the Michigan State Police (MSP). According to a letter from the MSP Forensics Science Division Commander, Barna's 2003 proficiency test results were deemed invalid because Barna completed the test with the assistance of a subordinate scientist, Lynne Helton. Helton was also involved in evaluating evidence in Petitioner's cases. Petitioner argues that Barna's conduct shows that he contaminated samples or falsified test results in Petitioner's case.

Petitioner's argument is misguided. The DNA test results in Petitioner's cases were confirmed by an independent lab selected by Petitioner. The independent lab confirmed that the DNA profile from material gathered at the crime scenes matched Petitioner's DNA profile. The incident involving Barna's test results was removed in time from the DNA gathering and analysis performed by Barna in this case. In addition, Petitioner cross-examined Barna extensively at his trials regarding the collection, preservation and testing of the material from the murder scenes. Based upon the foregoing, the Court finds that Petitioner's argument regarding Barna's 2003 proficiency test results does not alter the conclusion that the state court's finding that sufficient evidence was presented to convict Petitioner was not contrary to or an unreasonable application of Supreme Court precedent.

H.  Right to Self-Representation on Appeal

Finally, Petitioner claims that he was denied his right to represent himself at oral argument on appeal.  A defendant, however, has no constitutional right to be present at oral arguments on appeal.  Price v. Johnston, 334 U.S. 266 (1948), *overruled on other grounds* McCleskey v. Zant, 499 U.S. 467 (1991).  Therefore, this claim is not cognizable on habeas corpus review.

V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is **DENIED**.  This case is **DISMISSED**.

**SO ORDERED.**


　s/Avern Cohn＿＿＿＿＿＿＿＿＿＿＿＿＿＿
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  August 27, 2007


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Michael Harris, 172430, Carson City Correctional Facility, P.O. Box 5000 Carson City, MI 48811-3000 on this date, August 27, 2007, by electronic and/or ordinary mail.


　s/Julie Owens＿＿＿＿＿＿＿＿＿＿＿＿＿
Case Manager, (313) 234-5160